# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1305


CARL RAVEY

VERSUS

ROCKWORKS, LLC, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20113689
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


Michael J. Remondet, Jr.
Jeansonne & Remondet
P.O Box 91530
Lafayette, LA 70509
(337) 237-4370
COUNSEL FOR DEFENDANTS/APPELLEES:
    Rockworks, LLC
    Colony Speciality Ins. Co.

**Kilyun Luke Williamson**
**Williamson, Fontenot & Campbel**
**343 Royal St.**
**Baton Rouge, LA 70802**
**(225) 383-4010**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Carl Ravey**

**SAUNDERS, J.**

This case involves a suit by the patron of a rock climbing facility against the facility for negligence in training and supervision. The trial court granted the facility's motion for summary judgment and dismissed the suit. We affirm.

**FACTS AND PROCEDURAL HISTORY:**

On August 14, 2010, Plaintiff-Appellant, Carl Ravey ("Ravey"), as a mentor for youth, was visiting Lafayette, Louisiana with the Civil Air Patrol, which operates out of Ascension Parish, Louisiana. The Civil Air Patrol is comprised of children aged twelve to eighteen. The group was in Lafayette for a training exercise at the University of Louisiana at Lafayette. While in Lafayette, the group of sixteen young men and women, with their adult chaperones, and with a Civil Air Patrol Unit from Hammond, Louisiana, visited Rok Haus to use the climbing facilities.

Upon their arrival, the participants paid their individual fees and initiated a group safety training exercise with Adelle Anderson ("Anderson"), one of the employees at Rok Haus that evening. The attendees received training and instruction on climbing safety and the safe use of climbing equipment in a fifteen to twenty minute safety meeting known as a "belay check." Every climber at Rok Haus is harnessed and equipped with a safety rope, which is attended to and operated by a "belayer," who controls the safety rope through a locking device known as a Grigri. The belayer's job is to look after the climber's ropes and to operate the Grigri. In order to release the rope to allow a climber to descend, the belayer must pull a lever on the side of the Grigri.

Following safety training, Ravey began to climb the rock wall while tethered to his belayer, David Kelley ("Kelley"), a fourteen-year-old member of the Civil Air Patrol. The group climbed for approximately forty-five minutes when Ravey,

upon reaching the top of the wall, a distance of approximately twenty to twenty-four feet from the ground, fell almost all the way to the ground. He was partially suspended, but fell far enough such that his leg impacted the floor and was injured. As Ravey fell, the safety rope fed freely through the locking device indicating that Kelley was holding the lever in the open position. When Kelley released the lever, the Grigri locking device engaged and the rope arrested Ravey's fall, but Ravey's leg had already made contact with the floor and was injured.

Ravey brought this action alleging negligence on the part of Rok Haus and its affiliates/insurer. Rok Haus filed a motion for summary judgment alleging no duty was breached on the part of Rok Haus and that there was no genuine issue of material fact so judgment was proper as a matter of law. The trial court granted the motion for summary judgment and dismissed Ravey's claims. Ravey appeals.

## ASSIGNMENTS OF ERROR:

Ravey sets forth the following assignments of error:

1. The trial court erred in granting the motion for summary judgment as there is an increased duty to provide training and supervision when minors are involved in an inherently dangerous activity.

2. The trial court erred in granting the motion for summary judgment as there are genuine issues of material fact regarding the adequacy of training received by the Ravey party prior to engaging in a hazardous activity and regarding the adequacy of the supervision provided after training.

## LAW AND ANALYSIS:

**Standard of Review**

When an appellate court reviews a district court's judgment on a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is

2

appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638.

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966. "[I]f reasonable persons could only reach one conclusion, then there is no need for trial on that issue and summary judgment is appropriate." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66 (*quoting Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). A fact is "material" when "its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Smith*, 639 So.2d at 751.

## 1. Heightened Duty

The first issue raised on appeal deals with the issue of negligence on the part of Rok Haus. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) duty, (2) breach, (3) cause-in-fact, (4) scope of duty/scope of risk, and (5) actual damages. *Pinsonneault v. Merch. & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270.

"Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any law--statutory, jurisprudential, or arising from general principles of fault--to support his claim." *Faucheaux v. Terrebonne Consol. Government*, 615 So.2d 289, 292 (La.1993). The duty owed to an invitee "is that of reasonable and ordinary care, which includes the prior discovery of *reasonably discoverable* conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger." *Alexander v. Gen. Acc. Fire &*

3

*Life Assur. Corp.*, 98 So.2d 730, 732 (La.App. 1 Cir. 1957). "[M]embers of [gyms] are owed a duty of reasonable care to protect them from injury on the premises." *Thomas v. Sport City, Inc.*, 31,994 (La.App. 2 Cir. 06/16/99), 738 So.2d 1153, 1157. "This duty necessarily includes a general responsibility to ensure that their members know how to properly use gym equipment." *Id.*

Ravey argues that rock climbing at Rok Haus is an unreasonably dangerous activity such that it requires a heightened duty. In support of this argument, he cites *Prier v. Horace Mann Ins. Co.*, 351 So.2d 265 (La.App. 3 Cir. 1977), *writ denied*, 352 So.2d 1042 (La.), where the court found that a greater degree of care must be exercised by a school if a student uses an inherently dangerous object or engages in an activity where it is reasonably foreseeable that an accident or injury may occur.

In *Prier*, the court stated that a teacher could not be "liable in damages unless it is shown that he or she, by exercising the degree of supervision required by the circumstances, might have prevented the act which caused the damage, and did not do so." *Prier*, 351 So.2d at 268. "It is also essential to recovery that there be proof of negligence in failing to provide the required supervision and proof of a causal connection between that lack of supervision and the accident." *Id.* It further explained:

> Again, the school board cannot foresee and guard against all the dangers incident to the rashness of children. It is not the insurer of the lives or safety of children. The school board, through the principals and/or the teachers, are expected to take reasonable precautions and care to avoid injury to the students.

*Id* at 269 (*quoting Whitfield v. East Baton Rouge Parish Sch. Bd.*, 43 So.2d 47 (La.App. 1 Cir. 1949)).

As with school boards, gyms are not the insurers of the lives or safety of the patrons of the club. *See Gatti v. World Wide Health Studios of Lake Charles, Inc.*,

4

323 So.2d 819 (La.App. 2 Cir. 1975). A gym cannot be expected to foresee or guard against all dangers incident to the rashness of its patrons. Furthermore, the gym must only take reasonable precautions under the circumstances to avoid injury. To prove negligence on the part of Rok Haus, Ravey must show both a failure to provide reasonable training and supervision under the circumstances, as well as proof of a causal connection between this lack of reasonable training/supervision and the accident.

As a gym, Rok Haus owed a duty of reasonable care under the circumstances. The equipment was visually inspected prior to usage and was functioning properly after the incident.[1] Ravey and Kelley were given proper instructions on how to climb the wall and use the equipment properly. Ravey and Kelley were also observed using the equipment to lower climbers properly before they were allowed to climb and belay by themselves. During the time the group was climbing prior to the accident, two Rok Haus employees observed the group to ensure they were using the gym's equipment properly. Ravey made five or six successful climbs on the wall of the gym prior to the accident.

It cannot be said that Rok Haus acted unreasonably in training its patrons on the proper use of the climbing equipment and in assisting the patrons with the equipment. Rok Haus employees provided the usual training to Ravey and his belayer. The employees observed them using the equipment properly before allowing them to climb on their own. The Rok Haus employees also continued to supervise the climbers after training. There is no evidence that the measures taken by Rok Haus' employees to protect its patrons were inadequate under the circumstances and that a lack of supervision/training caused the accident. There

---

[1] The particular Grigri (hand brake) in question remained in use for approximately one year after the incident.

5

has not been a showing of both a failure to provide proper supervision and training along with a causal link to the incident in question. As such, there is no evidence that Rok Haus breached its duty of as a gym owner. Because the first element of negligence has not been sustained, the other four will not be addressed.

**2.      Adequacy of Training & Supervision**

The final issue raised on appeal is whether there is a genuine issue of material fact as to the adequacy of training and supervision provided by Rok Haus. The existence of evidence as to inadequacy of training and supervision is essential to plaintiff's cause of action. Without evidence as to said inadequacy, summary judgment was proper. *See* La.Code Civ.P. art. 966.

Rok Haus mandates a "belay check" safety session before any patrons climb the rock walls. During the belay check, the patrons are assisted with donning their harnesses and fastening themselves to the safety ropes. When a patron is climbing the wall, he is attached to a rope that runs up to a pulley anchored to the ceiling. From the pulley, the rope runs down to the belayer. The belayer wears a harness which is anchored to the floor and attached to the Grigri, through which the rope from the ceiling pulley runs. The function of the Grigri is to clamp the rope if the climber should fall. It is designed such that it is automatically clamps the rope if there is a sudden pull on the rope. In order to feed slack to the climber so that he may descend, the belayer must manually pull a lever to release the clamp on the rope.

The members of the Civil Air Patrol were instructed in pairs. Ravey and Kelly were given instructions on how to climb the wall and use the equipment properly. When climbing higher than ten feet along the wall, as Ravey was doing, climbers and belayers are required to wear harnesses attached to a safety rope. After instructions and assistance in donning the protective gear, the climber and

6

belayer were instructed in the proper method of belaying. Thereafter, the belayers handle the ropes under the instructors' supervision.

Once the instructor determines the belayer can handle the safety ropes correctly, the belayers are instructed in the proper procedure for lowering a climber. The belayers must then operate the rope and the Grigri under the supervision of an instructor. After demonstrating an ability to belay the instructor, the belayers are allowed to belay volunteer climbers in the group under the supervision of the instructor.

This safety training session lasted approximately fifteen to twenty minutes. The members of the Civil Air Patrol group were individually instructed in safe climbing and belaying techniques and were observed operating the equipment properly before being allowed to climb and belay on their own. After receiving their safety training in the proper methods of belaying, Ravey, Kelley, and the rest of the Civil Air Patrol group climbed for forty-five minutes to an hour. During this time, two supervisors were present who observed the group to ensure that they were using the gym's equipment properly. Ravey made five or six climbs on the wall prior to his accident.

There is no evidence to suggest that Rok Haus did not act reasonably in training its patrons on the proper use of the climbing equipment and in assisting the patrons in donning the equipment. Each patron who belays (operates the safety control device, the Grigri, and controls the safety rope) is personally instructed on the proper belaying techniques and is observed to ensure that the patron is capable of operating the equipment correctly before they are allowed to belay on their own. Furthermore, after completion of the safety check and practice, the climbers remained under the supervision and watch of two supervisors. The absence of evidence as to the material facts of inadequate training and inadequate supervision

7

makes summary judgment appropriate. As such, summary judgment as to the adequacy and training and supervision was proper.

We note that rock climbing is a recreational activity that involves substantial risk. Many other recreational activities such as weight lifting and swimming also involve a substantial degree of risk. The risk associated with these and other physically-challenging sports are well recognized. The duty on the gym operator, when these types of sports are conducted, is that of providing a sound and secure environment for undertaking a clearly risky form of recreation and not that of removing every element of danger inherent in rock climbing, weight lifting, or swimming. The duty imposed on the gym is one of reasonable care under the circumstances. Ravey focuses on the age of the boy holding the rope and argues that he should have been given more training because of his age. However, Ravey points to no authority suggesting that fourteen year olds are not adequately mature to perform this kind of activity or that the training was inadequate in this instance. The record contains no evidence to suggest the training was inadequate or that a person of fourteen years would need more training than was given to teach him to perform. It is this total absence of evidence that drives the summary judgment process and, in this case, compels affirmation.

## CONCLUSION:

The record contains no evidence to suggest that the duty of Rok Haus to provide training and supervision was not done reasonably under the circumstances. Furthermore, there is no genuine issue of material fact as to the adequacy of training received by the Ravey party prior to engaging in climbing and regarding the adequacy of the supervision provided after training.

Costs of this appeal are assessed to Ravey.

**AFFIRMED**

8